# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DEMOINE L. MALLETT,**

        **Plaintiff,**

        v.                               Case No. 19-CV-512

**ANDREW M. SAUL,**
**Commissioner of the Social Security Administration,**

        **Defendant.**

## DECISION AND ORDER

### 1. Introduction

Alleging that he has been disabled since December 1, 2012 (Tr. 13), plaintiff Demoine L. Mallett seeks supplemental security income. After his application was denied initially (Tr. 153-60) and upon reconsideration (Tr. 161-78), a hearing was held before an administrative law judge (ALJ) on August 17, 2016 (Tr. 81-128). On February 22, 2017, the ALJ issued a written decision concluding that Mallett was not disabled. (Tr. 180-96.)

The Appeals Council on July 24, 2017, remanded the case to the ALJ for rehearing. (Tr. 202-05.) A second hearing was held on February 28, 2018 (Tr. 37-80), and on April 23, 2018, the ALJ again issued an unfavorable decision (Tr. 10-28). The Appeals Council

denied review on March 21, 2019 (Tr. 1-5), and Mallett filed this action on April 9, 2019 (ECF No. 1). All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 5, 6), and the matter is ready for resolution.

2. **ALJ's Decision**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 416.920(a)(4). At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). The ALJ found that Mallett "has not engaged in substantial gainful activity since September 26, 2013, the application date." (Tr. 15.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.922(a). The ALJ concluded that Mallett has the following severe impairments: "disorders of the spine, disfunction of major joints, disorders of the muscle, ligament and/or fascia, affective disorders, and an organic mental disorder." (Tr. 15.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically

2

equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. § 416.909, the claimant is disabled. 20 C.F.R. § 416.920(d). The ALJ found that Mallett "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 17.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. § 416.945(a). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Mallett has the RFC

> to perform light work as defined in 20 CFR 416.967(b) except he has additional limitations. He can climb ramps and stairs occasionally. He can never climb ladders, ropes or scaffolds. He can occasionally stoop, kneel, crouch and crawl. The claimant can never work at unprotected heights or around moving mechanical parts. He can never operate a motor vehicle in the workplace. He cannot work in an environment in which he will have exposure to humidity and wetness. With regard to understanding, remembering and carrying out instructions, the claimant can perform simple, routine tasks. With regard to the use of judgment in the workplace, he can make simple work-related decisions.

(Tr. 19.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.960. The ALJ concluded that Mallett "is able to perform past relevant work as a sale attendant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. 26.)

Alternatively, at step five, considering his RFC, age, education, and work experience, 20 C.F.R. § 416.920(a)(4)(v), 416.960(c), the ALJ concluded that Mallett could perform other jobs that exist in significant numbers, including sorter or mail clerk. (Tr. 27.) Therefore, he was not disabled.

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence

supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder*, 529 F.3d at 413).

## 4. Analysis

### 4.1. Use of a Cane

Mallett reported that he would regularly use a cane to walk. The ALJ, however, concluded that a cane was not required because, in part, physical examinations repeatedly noted that Mallett had normal posture, strength, and gait, and Mallett reported walking for exercise. (Tr. 21.) Mallett argues the ALJ erred in dismissing his reported need for a cane.

The ALJ said, "the record shows that the claimant stated that he did seven days of walking for exercise." (Tr. 21.) The document the ALJ cited in support was from a July 28, 2017 follow-up appointment regarding Mallett's diabetes, which document included the following line under "History of Present Illness": "Pt. is exercising. Walking around the block." (Tr. 849-50.) The ALJ's statement that Mallett reported "seven days of walking for exercise" (which the court understands as suggesting that Mallett walked every day) is not supported by the cited document. More importantly, nothing in the statement that Mallett was walking around the block is inconsistent with Mallett's claim that he needs to use a cane to walk.

5

The ALJ also stated that in October of 2017 Mallett reported that he enjoys walking. (Tr. 21 (citing Tr. 1336).) Again, nothing about the fact that Mallett enjoys walking is inconsistent with his need to use a cane when he walks.

The ALJ also dismissed Mallett's need for a cane by noting that "his physical examinations in 2014, 2015, 2016 and 2017 repeatedly showed that he had normal posture, a normal gait, and normal strength (Exhibits Dl4F, D22F, D23F, D29F)." (Tr. 21.) The exhibits cited by the ALJ include numerous boilerplate notations regarding his muscular function: "normal posture and gait, normal strength." But they all predate 2016. (Tr. 707, 914 (Oct. 12, 2015); 712 (Sept. 25, 2015); 919 (Sept. 15, 2015); 715, 921 (July 9, 2015); 721, 926 (May 7, 2015); 725, 930 (April 17, 2015); 728, 932 (Feb. 24, 2015); 733, 936 (Dec. 16, 2014); 736, 939 (Oct. 16, 2014); 744, 946, 949 (Aug. 14, 2014); 747, 951 (July 16, 2014); 750, 954 (June 16, 2014); 754, 957 (May 16, 2014); 757, 961 (April 7, 2014); 761, 965 (Jan. 9, 2014); 764, 967 (Nov. 6, 2013); 767, 970 (Oct. 7, 2013); 775, 978 (July 31, 2013).)

In late 2015 the boilerplate changed to "Msk: ambulates with cane." (Tr. 687, 895 (Feb. 23, 2016); 690, 899 (Jan. 26, 2016); 695, 903 (Dec. 28, 2015) 700, 906 (Dec. 10, 2015).) By early 2016, the boilerplate became, "Msk: Slowed rising form seated position, ambulates with cane." (Tr. 877 (July 15, 2016); 671, 881 (May 17, 2016); 676, 885 (April 19, 2016); 681, 891 (March 29, 2016).) Then it became "Msk: walking with cane with slight limp on R side." (Tr. 868 (Aug. 22, 2016); 872 (July 25, 2016). Subsequent examinations noted "Msk: stiffly moving from sitting to standing, ambulating with cane" (Tr. 840 (Jan.

6

9, 2017), and "Msk: left knee pain, difficulty going from sitting to standing with patient grabbing back and staying hunched over for approx 5-10 seconds before being able to stand erect." (Tr. 845 (March 30, 2017).)

There are also other instances in the 2014 to 2017 period where Mallet's gait is noted to be abnormal: "Gait: fwd trunk bend, cane, decreased stance on L, antalgic L" (Tr. 819 (Aug. 19, 2015); "Intervention … Gait Training" (Tr. 1041 (Oct. 24, 2016)); "Gait: Patient ambulated with a slow gait with limited Spine motion independently" (Tr. 1270 (Sept. 18, 2017); "ambulated with a slow gait with limited Spine motion independently" (Tr. 1270 (Sept. 18, 2017); "antalgic gait; uses a cane" (Tr. 1338 (Oct. 9, 2017)). And significantly, on November 14, 2017, a physician prescribed a cane. (Tr. 1271.) At a minimum, the ALJ's conclusion that Mallett did not need to use a cane when walking was based on an impermissible cherry-picking of the evidence. *Martin v. Saul*, No. 19-1957, 2020 U.S. App. LEXIS 3743, at *12 (7th Cir. Feb. 7, 2020) (citing *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)).

Gait problems also predated 2014 and the onset date of Mallet's alleged disability: "limp noted-right and using cane-right" (Tr. 772; 974 (Sept. 5, 2013)) and "Gait: antalgic" (Tr. 776, 979 (July 31, 2012)). These notations appear as part of a "Knee Exam" and a "Detailed Back/Spine Exam," respectively. Such examinations appear to have occurred only on July 31, 2012, and September 5, 2013, and notably both documented an abnormal

7

gait. The bulk of the visits in the documents the ALJ cited appear to be more routine in nature and do not include this sort of specialized examination.

Moreover, although as part of the "Detailed Back/Spine Exam" the examiner on July 31, 2012, noted that Mallett's gait was antalgic, as part of the general examination, under "Msk:," the boilerplate "symmetrical with no deformity, with normal posture and gait, normal strength" is listed. This contradiction calls into question the reliability of the statement "normal posture and gait, normal strength" when it seems to be used as rote boilerplate in Mallett's medical records.

If Mallet is required to use a cane, such an additional limitation would preclude him from all work. (Tr. 79.) However, the evidence is not so one-sided that the court can say that a direct award of benefits is appropriate. *Cf. Martin v. Saul*, No. 19-1957, 2020 U.S. App. LEXIS 3743, at *14 (7th Cir. Feb. 7, 2020). On reevaluating all the evidence, it may be reasonable to conclude that Mallett's need for a cane is not supported by the medical evidence, or at a minimum that it was not required during the entire period of alleged disability. After all, there are many instances other than the boilerplate referenced by the ALJ where a medical provider noted that Mallett's gait was normal. (Tr. 528 (May 23, 2012); 571 (Feb. 11, 2014); 656 (Sept. 4, 2014); 782 (Feb. 24, 2015); 784 (Jan. 27, 2015); 835, 1232 (Sept. 14, 2016); 1228 (Aug. 27, 2016).) Or the ALJ may be able to conclude that Mallett does not always require a cane. It would be for a vocational expert to assess how this would impact his employability.

### 4.2. Weight Afforded McElfresh's Opinion

The ALJ afforded "little weight" to the opinion of Garrett McElfresh, Mallett's treating physical therapist. The ALJ discounted McElfresh's opinion, which amounted to a conclusion that Mallett was incapable of working (Tr. 829-32), because the

> extreme limitations are inconsistent with the treatment records. The treatment records showed that the claimant repeatedly exhibited some good physical function upon examination including normal strength, intact sensation, a steady gait, and normal heel, toe and tandem walking. Moreover, Mr. McElfresh provided this opinion after only treating the claimant for two weeks. Further, Mr. McElfresh is not an acceptable medical source as defined by the regulations.

(Tr. 25.)

The fact that McElfresh, as a physical therapist, was not an acceptable medical source, meant only that his opinion could not be afforded "controlling weight." 20 C.F.R. § 416.927(c)(2). It is not an independent reason for assigning an opinion "little weight." *See Gulley v. Berryhill*, No. 17-CV-1782, 2019 U.S. Dist. LEXIS 25986, at *5 (E.D. Wis. Feb. 19, 2019).

Arguing that the ALJ erred in discounting McElfresh's opinion on the basis that he had treated Mallett for only two weeks when he offered his opinion, Mallett points out that the ALJ afforded more weight to certain non-treating sources—that is, to sources that had *never* treated him. But this purported incongruity is not necessarily error. Whether the source was a treating source and, if so, the length of the treating relationship, are both factors relevant in assessing opinion evidence. 20 C.F.R. § 416.927(c). But they are among

9

several factors that an adjudicator must consider. Individual factors may tip different ways for different sources. The ALJ's (and court's) concern is the overall weight of the factors.

In this regard, most significant to the ALJ's conclusion appears to have been his observation that "[t]he treatment records showed that the claimant repeatedly exhibited some good physical function upon examination including normal strength, intact sensation, a steady gait, and normal heel, toe and tandem walking." (Tr. 25.) But the ALJ did not provide a citation for that statement. Thus, it is unclear which treatment records he was referring to. The court presumes the ALJ was relying, at least in part, on the same cherry-picked evidence discussed above. Therefore, on reassessing this evidence on remand it will also be necessary for the ALJ to reassess the weight afforded to McElfresh's opinion.

**4.3. Symptom Severity**

Finally, Mallett argues that the ALJ's assessment of his symptoms is not supported by substantial evidence and did not comply with SSR 16-3p. The ALJ offered the boilerplate:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments reasonably could be expected to cause the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

The problem, as is so often the case, is that the ALJ failed to build an accurate and logical bridge between the conclusion set forth in this boilerplate and the evidence. What follows this conclusion is a general discussion of the evidence. "An ALJ does not comply with his obligation to provide 'specific reasons for the weight given to the individual's symptoms,' SSR 16-3p, by merely recounting the medical evidence and stating a conclusion. The ALJ must connect that medical evidence to his conclusions ...." *Krevs v. Saul*, No. 18-CV-1742, 2020 U.S. Dist. LEXIS 1236, at *6-7 (E.D. Wis. Jan. 6, 2020). From the ALJ's discussion of the evidence the court can glean possible reasons for concluding that Mallett's symptoms were not as severe as he alleged. But the court can also identify many reasons for crediting Mallett's statements regarding the severity of his symptoms. The ALJ generally failed to explain why he credited evidence on one side over contrary evidence.

But, more importantly, as noted above the ALJ's recitation of the evidence was incomplete. This cherry-picking of the evidence appears to have similarly impacted his assessment of the severity of Mallett's symptoms. For example, in addition to the issues identified above, the ALJ stated that Mallett reported that his symptoms improved with medication and that "[h]e did not complain of any significant medication side effects." (Tr. 21.) Yet Mallett reported that his medications make him drowsy, requiring him to nap for two to three hours a day, five to six days a week. (Tr. 66-67.) Such a side effect certainly is "significant" when it comes to Mallett's ability to engage in full-time work on

11

a sustained basis. Therefore, on remand the ALJ must also reassess the severity of Mallett's symptoms in light of the evidence as a whole.

5. **Conclusion**

The ALJ's decision was based on an impermissible cherry-picking of the evidence. This selective consideration of the evidence undermined the ALJ's conclusion that Mallett did not require a cane, as well as his assessment of McElfresh's opinion and the severity of Mallett's symptoms.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 20th day of March, 2020.

WILLIAM E. DUFFIN
U.S. Magistrate Judge